Good morning. I have asked to reserve five minutes for rebuttal. May I please watch the clock? I'm sorry, Your Honor? Please watch the clock. Oh, thank you, Your Honor. May it please the Court, my name is Robert King and I represent appellant Ryan Loker. I'd like to start with the issue of the statute of limitations on the 1102.5 claim and then discuss the issues relating to summary judgment and the evidentiary rulings. No published California case has ever held that the availability of a penalty serves to reduce the statute of limitations on an underlying claim for actual damages. In fact, every California court that has considered that issue in a published decision has found that claims for penalty are severable from claims for actual damages and that they're subject to different statutes of limitation. That's what the California Court of Appeals held in GHII where mandatory treble damages were barred but actual damages were not. Can I ask just a practical question? Because your client won a jury trial, right, so he got damages. This wouldn't affect anything about the damages because those are coverage. This is really a question about attorney's fees. Is that the way I understand it? That is correct, Your Honor. Okay. So there's no additional damages that would be allocated to this claim that wouldn't be allocated to the claim that did go forward and got a jury? That's correct, Your Honor. It is our position that the Tammany claim completely overlaps. And the claim that you won on doesn't allow for attorney's fees but this one would? That's correct, Your Honor. Okay. And so, in essence, where there are two claims, those claims are considered to be separate for purposes of the statute of limitations. Just to follow up on that question, would it have to be remanded if we agreed with you for a new trial on the damages, statutory damages claim? I don't believe so, Your Honor. It is, again, our position that the Tammany claim, which has, frankly, a lower burden on the plaintiff or a higher burden on the plaintiff, excuse me, would be res judicata as to the 1102.5 claim. Is there any case that supports that interpretation? There is not, Your Honor, but simply looking at the causes of action for a Tammany claim for wrongful termination, the plaintiff needs to prove by a preponderance that the termination violated a fundamental public policy. Here, that fundamental public policy was 1102.5, somewhat ironically. So that argument you would make to the district court, if we remanded and agreed with you on this issue, you'd make that argument to the district court and try to get a summary judgment ruling on it based on res judicata, and then you'd ask for attorney's fees if you got summary judgment. But if the district court disagreed with you on that, then there would be a trial on this other claim. That's correct, Your Honor. Maybe you'd end up with what you felt like were inconsistent results if that trial came out a different way. That's correct, Your Honor, and that's why we have asked the court to address some of the evidentiary rulings that we believe were in error below in the case that the district court disagrees with us and that there is the necessity for another trial. So you think that we need to address those evidentiary rulings regardless of how we come down on the first claim? I suppose that if you were to affirm the district court on the 1102.5 claim, there would be no conceivable need for a new trial, and you wouldn't need to address the evidentiary issues. What if we agreed with you on the first issue? Could we send those issues back to the district court? I suppose they're already decided from the district court's perspective, the evidentiary ruling. Is there any chance that the court would reconsider that? Is there any reason we should let the district court address that in the first instance if this one claim can go forward? I can't speak for the district court, obviously, Your Honor. I imagine the district court would be disinclined, absent guidance from this panel, to reconsider those rulings in a new trial because of the basically perfect overlap between the claims. I don't think that the addition of the 1102.5 claim meaningfully impacts the court's analysis. It doesn't change the analysis that the district court did in refusing that evidence. Correct, Your Honor. I think just to try to address the various district court claims or cases that have come out on this issue, there seems to be a lot of confusion about the mandatory language that comes out of Jensen and the other cases finding that Section 340 applies. I think it's important to note that that language simply, whether a claim for penalties is mandatory versus discretionary, that language comes out of an analysis about whether 340 applies to the claim for penalties itself. In Jensen, the consideration was whether the double damages provision of the Song-Beverly Act would be governed by a one-year or a four-year statute of limitations. There was, in fact, no question as to whether the underlying claim for damages would be subject to a more limited statute of limitations in the event that the penalties were implied. I think the mandatory language really looks at whether 340 applies at all to the claim for penalties, and it doesn't answer the separate question of whether the claim for damages and the claim for penalties are separable. As I say, every court to consider that issue has found that they're separable. I think that that through line is found in the more well-reasoned district court opinions that address this issue, like IALA, where the court recognizes that there are distinct claims, one under 1102.5 or 1105, depending on how you slice that, and then that there's a distinct claim for penalties under 1102.5 Section F and that they're distinct claims subject to distinct statutes of limitation. Can I ask you a question? I know you want to reserve five minutes, but going back to the evidentiary, I'm trying to figure out if we do address the evidentiary claims. As I recall, Walmart's one of their key arguments on the merits of why the evidentiary ruling was correct is that Walmart had stipulated to that element that the evidence would have gone to, and so the evidence was unnecessary because they had stipulated to it. Assuming that we agree with that with regard to the claim that Walmart already lost on, that you won on, would that carry over to, I haven't thought through how that would carry over to, the claim that we would be sending back if we sent it back? Would Walmart have also stipulated that element with regard to that claim? Yes. I apologize, Your Honor. In fact, Walmart didn't end up stipulating to the element because the element that they offered to stipulate to was an element of 1102.5 and not necessarily an element of the Tammany claim. They offered to stipulate to his reasonable belief in the illegal conduct. I'm sorry. I'm not tracking the numbers because I'm not as conversant with Kelber. Yes, it was. You're saying it is an element. What they stipulated to is actually an element of this claim that you're asking us to send to reverse the district court on and send back that the district court said was barred by a statute of limitations. That's correct, Your Honor. Okay. And with respect to the— So why—can you respond to Walmart's argument as to why that doesn't— why you need to make that evidentiary showing if they've already stipulated to that? Yes. First, Your Honor, there is authority that we don't need to accept a stipulation in lieu of presenting evidence. Evidence is inherently more powerful to a jury than a stipulation. But more importantly— And how does that play into the weighing of whether it would be prejudicial? Because you can imagine a judge saying, well, yeah, I'm going to let this end because they have to prove this. I understand it could have some prejudice, but in the balancing, that makes sense. But as soon as you no longer actually need it to make your case because they've stipulated to it, then all of a sudden maybe the balance changes to where the prejudicial aspect of it in theory could outweigh. So how does that play out? Yes, Your Honor. And I think that my response to that is that the evidence goes to more than one of the issues. And, in fact, Walmart refused to stipulate due causation, right? And Walmart has advanced a defense that Mr. Locher's manager, Cynthia Newland, fired him for attendance points, and that Mr. Berry, the store manager, accepted Ms. Newland's recommendation to fire him for attendance points. The evidence about the cold chain violations themselves seriously impacts the credibility of both of those managers, specifically Ms. Newland. Ms. Newland testified in her deposition and at trial that there were no cold chain violations. She never saw any cold chain violations. Mr. Locher, neither Mr. Locher nor anyone else ever complained of cold chain violations. That is contradicted by numerous third-party witnesses, by Mr. Locher's complaint itself, and by other witnesses that testified or at least offered to testify that there were cold chain violations. Ms. Newland saw them. She was aware of them. She knew of their complaints. They heard Ryan complaining, and they, in at least one case, complained themselves and were subsequently retaliated against. I'm getting real close to your five minutes. Can I ask you one follow-up to that? And that is, if we assume that that was true, that his, I think, I'm forgetting the names, but his immediate supervisor was aware of these things, but we also assume for a second, I'm not saying you agree with this, but assume for a second that the person that actually fired him, the store manager, I think, that he did not, so we accept his affidavit and Walmart's arguments on that. Is that evidence still relevant for the second thing that you're talking about? Why does it matter? Yes, Your Honor, because at that point, we would need to proceed on the cat's paw theory, and Ms. Newland's credibility, in fact, whether she recommended his termination because of retaliation or because of his accrual of points is the central issue in the case, and Ms. Newland's credibility is obviously key to that issue. And so the fact that Ms. Newland lied about the very thing that Mr. Locher was complaining about suggests that she was not being truthful when she says, I didn't know about this thing. In fact, I fired him for an accrual of points. Okay. Good morning, Your Honors. May it please the Court, Kyne Hudson for Walmart. On the limitations issue, I'd like to begin as the California Supreme Court has instructed with the statutory text. California Code of Civil Procedures, Section 340A, provides that a one-year limitations period applies to any, quote, action upon a statute for a penalty or forfeiture. So, you know, the same arguments you made in your brief, and, you know, I like textual arguments. But we're also in the Ninth Circuit, which is California, and we're dealing with California law. So at the end of the day, I don't – the struggle is that maybe if we were writing on a blank sheet of paper, we would agree with you, although there are some challenges with what you have with the enactment history. It doesn't make sense to me that you have something that has a three-year statute. You add something that obviously the legislature is trying to make this regime stronger and that they just, like, implicitly shortened everything to one year. But the problem is you – I think they're right that you don't – we have cases, not exactly for this statute as I understand it, but we have – but all of the cases from the Intermediate Court of Appeals say that basically when you have both types of claims in one statute that you look at them differently, treat them as separate claims or however – several of them, whatever language you want to use. So you're up against that, and I just don't know that your textual arguments that you ably made in your brief can overcome the only evidence we have of what we think the California courts would do. So what do we do with that? Yes, Your Honor. I'd like to address both of those points, the publishing of intermediate appellate court decisions and the legislative history, and I'll do that in turn. So starting with the – Appellate enactment history. Enactment history. Because it really has to do – Yes, no, agreed. It really has to do more, I think, with knowing what was in place before. Agreed. And it's not looking at what the legislatures were thinking, but what was in place before and what got passed. Agreed. So maybe that's easier, so I'll start with that. So I don't disagree with the amici's recitation of the statutory history, the history of the enactment. The critical point is it's irrelevant because the language that this court is being asked to interpret is not the language of 1102.5. The language that this court is being asked to interpret is the language of Section 340, which has been in place since the early 20th century and hasn't changed. And the Section 340 has been interpreted in essentially three different ways, and I promise I'll get to those intermediate appellate court decisions. But first, some courts have said if an action is subject to the one-year limitations period, if it is brought under a statute that provides for mandatory penalties regardless of what relief is sought, that's option number one. Number two, other courts have said the one-year limitations period applies if a penalty is sought even if other remedies are also sought. That's option number two. Walmart wins under either of the first two theories. And then the third approach is some courts have said the one-year limitations period applies to a specific form of relief penalties, and then it doesn't apply to other forms of relief even if they are brought under the same cause of action. So those are the three approaches. And so that's number one. So I think whatever Section 340 means, which of those three interpretations, it means always. It can't possibly have a different meaning depending on which organic substantive statute is in view. That wouldn't make any sense. So for that reason, I don't think the statutory history of 1102.5 applies. And also, I think if you adopt the second view, which means that the one-year limitations period applies only if a penalty is sought, that's not inconsistent with the legislature's view because no plaintiff is worse off with the statutory amendment because they can always avoid the one-year limitations period by simply not seeking penalties. So again, that, I think, adequately addresses the statutory history that's articulated in the amicus brief. So turning to the published intermediate appellate court decisions, you're right, Your Honor, there are three published intermediate appellate court decisions, GHII, Menefee, and Hypertouch, and they do, I will candidly admit, they do adopt a version of plaintiff's approach. There are two, a couple of critical important things. They adopt the third under your, where you were explaining the third one.  They adopt the third one, but there is a twist on the third one, which is very important. Each of those three decisions say you can adopt this approach if the remedies are contained in separate provisions. So they look very carefully at the structure of the statute to ensure that they are contained in separate provisions, and indeed in Menefee. Okay, to make sure I understand, so you're saying it like they say that. As I recall, and it's been a while since I reviewed that detail, but I recall that was your argument. I don't remember that they actually said that, that the decisions actually said that. That was your way of distinguishing them. Yes, so GHII says different limitations period apply to different remedies, quote, where the different remedies are authorized by separate independent statutory provisions. Separate independent statutory provisions is the language they use. Opposing counsel looks at California Labor Code Section 1105 as interpreted by the California Appellate Courts. I mean, I take your point that that isn't what Section 1105 says, but I take their point that that's how it's been interpreted by, I think, Tazwell. So that is a separate statutory provision. Yes, Your Honor, and I think if the court were to agree with that view, that 1105 is a separate statutory provision that authorizes this, Walmart would be happy with that view because that means they don't get attorney's fees because the attorney's fees are authorized by 1102.5J, not 1105. But that's an argument you could make below if we agree. That's right, Your Honor. I think you're not obligated to address that. I mean, I'm saying even if we accepted their argument that, like, look, the weight of intermediate California authority goes this way, you've still got arguments about why attorney's fees aren't warranted. Yes, you're right, Your Honor, yes, of course, depending on the nature of the court's opinion. But, yeah, I agree. But I think it is critical that in order to prevail under the approach articulated by these three intermediate appellate court decisions, they need to show that their claim for damages actually is in a separate provision and they say 1105, and that has negative consequences. You read from the one and you said that that seems to fit with it, it has to be in a separate statutory. Did all three of them rely expressly on that? And I thought I remember at least plaintiffs in response when they came back, they said, well, this one is actually in the same provision. Yes. So, yes, I'm happy to answer that, Your Honor. So, yes, they all say that. And Menefee, for example, says, quote, certain statutory schemes contain separate independent statutory provisions for recovery of actual damages and treble damages. And then in Menefee they say, all causes of action were premised entirely upon an alleged violation, that was a rental court ordinance in that case, not any separate independent wrong, so all are subject to Section 340. Now, HyperTouch uses that same approach. It quotes that same language. I will acknowledge the bottom line result in HyperTouch is in some tension with that approach because HyperTouch says, well, the provisions for actual damages and liquidated damages are in separate statutory subdivisions. So they were in the same code section, they were just separate subdivisions, and HyperTouch says that's sufficient. So, now, is that a plausible application of that rule? Not entirely clear. Also, is that consistent with Menefee? Also not entirely clear. But they all purport to be applying that approach. I should note, I think this is important, that all three of these cases, this is a line of cases, the subsequent cases are citing one another, and that the first of these, GHII, doesn't grapple with the text of Section 340 and instead draws inspiration from a case called Ashland Oil, which is from the Federal Temporary Emergency Court of Appeals, which, of course, doesn't exist anymore, from 1977 that adopts a freewheeling, purposive approach to Section 340. It says, oh, that would be ridiculous, that is inconsistent with the purpose of these statutes to require someone to bring a claim within one year, so we're not going to do that. But, in a way, that almost hurts you more because that suggests that California might be willing to go beyond. If we're trying to interpret what California courts would do, then it almost undermines the idea that we should rely on a plain interpretation of the statute. Well, except that that decision wasn't a California decision but was a federal appellate decision. Well, I understand that, but the fact that they were adopting that reasoning... And I agree, Your Honor. I think, at the end of the day, this court has to determine whether these three intermediate appellate court decisions accurately reflect ultimately what the California Supreme Court would do, and the California Supreme Court has said, and this court has said, that the California Supreme Court applies the plain text of the statute. So, in a way, you're sort of making the argument that we don't rely on the California Appellate Court because they've adopted an approach that the Supreme Court would not blast. That's correct, Your Honor. And there are, and I will admit, unpublished California intermediate appellate court decisions. The California Supreme Court has a more conservative or textual approach to interpreting statutes. They have said that they do, Your Honor. I am not a regular practitioner. We're all textualists now. Precisely. I am not a regular practitioner in California. I do occasionally, and I was very pleased to see that both in the California Supreme Court's decisions and in this court's decisions in diversity and diversity. Well, lip service is always a good thing anyway. So, but yes, I think at the end of the day, that is the question before this court. And I think it is also important to emphasize the point that I made before, that even those three intermediate appellate court decisions require the claims be, or the authorization for relief be in separate provisions. And here, I think, even if the court were to accept Mr. Lockersteer on that point, he has problems even getting attorney's fees. So I want to make sure you address the evidentiary issue, because you heard my questions about that. And I was kind of thinking that if we agreed with the appellants on the first issue that we didn't need to address the evidence, but their argument is, no, if we go back and they won't give us res judicata and we have to actually have a trial, we're more likely to win if we can bring in this evidence. My understanding, and it sounds like they're saying, well, actually the key issue that it goes to, Walmart has conceded, but it goes to other issues also. So why do we, do we need to reach the evidentiary issue if we send the others back? And if we do, why are they not correct that it goes to other issues? Yes. So to answer your first question about the need to decide it, to be candid, Your Honor, I do not think the court needs to decide it even if the court disagrees with us on the limitations issue. Number one, I think it is reasonably likely that res judicata will resolve this anyways, and so there would be no need to have a trial. Number two, it is not at all clear that Walmart would take the same position about stipulation, even let's set aside the res judicata point of view. It didn't work so well the first time. Exactly. So maybe they wouldn't take that position, which would then alter. I think there's a good chance that would alter the way the district court approached it. And then on the merits, this is well within the district court's discretion to say, I'm not saying the district court had to take this position, but it was well within the district court's discretion to say, Walmart is willing to stipulate to this. If we let this evidence in, we're going to have many trials about whether or not all of these other. So within a discretion in the sense of the balancing. Exactly, right, precisely. So you're sort of, you're at least conceding that even if it had some relevance to other issues that we have not stipulated to, because the big issue is the issue we stipulated to, then the balance might, to my question about whether the balance might shift that you would, do you think the district court could reach that? Exactly, Your Honor. And this is an unusual situation where we know that the district court's decision didn't prejudice Mr. Lockhart because he prevailed. The jury ultimately concluded on essentially the identical issue that he was, that his termination was retaliatory. And Walmart, of course, hasn't appealed the jury's verdict on that conclusion. And, of course, the jury's decision about the amount of damages is also res judicata, and will be res judicata as to both parties, of course. So it's hard for me to imagine any need to have an additional trial. None of this really affects our decision, but in your view, if we ruled for them on the limitations period, this goes back down, you would make your arguments about whether attorney's fees, you don't see a new trial happening, it sounds like. Correct, Your Honor. It is just hard for me to see a new trial happening, particularly in view of, that would just be a waste of the party's resources. It's hard to see why. A little bit of pressure, though, on Walmart, I guess, in settlement discussions or whatever. But basically, you'd have the discussion. You'd make your arguments about why even under that theory they don't get attorney's fees. Theoretically, the judge would make a ruling on the law, and then you'd say, okay, fine, we made our argument, but I guess we owe them. Or maybe you don't. Well, and I should note as well, Your Honor, that the 1102.5J authorizes attorney's fees. It doesn't automatically entitle the plaintiff. Okay, fair enough. That would be one of your arguments, but none of that requires a jury trial. Can I follow up on that? So you say that you went, but did he get, I'm remembering $170,000 or something like that. What was the damages award? The damages award, I believe, was. . . $130,000? Yeah. $130,000 or something. But I'm assuming that attorney's fees, because they say this is basically just about attorney's fees. But attorney's fees might be, they look like very good lawyers that have a very high rate. So I assume that attorney's fees could dwarf that. So why wouldn't Walmart be incentivized to roll the dice if we're talking about a million dollars worth of attorney's fees? In other words, the second claim somehow actually becomes much larger exposure for Walmart. Right, that's true, Your Honor, and I think the. . . I'm not trying to say you're lying. I'm just trying to say. . . No, no, no. I just think that it seems, to be candid, Your Honor, it just seems like not an efficient use of the court's resources to opine on these evidentiary issues where they only become relevant if the parties ultimately disagree about the application of race judicata. And I'm not taking a position today on race judicata. Should we at least make clear if we're not opining on them? Because you're going to go back and you're going to say they didn't opine on them. Obviously, they implicitly affirmed your. . . I would be happy for the court to say that we're not ruling on them. The judge can reconsider this. Yeah, of course I would not. No, I wouldn't. Given what I'm saying today, Your Honor, if the court didn't address them, I'm not going to use that against Mr. Locker here. Of course not. So I think the evidentiary issues, I think, are not. . . I think they're the tail wagging the dog, so to speak. The real issue here is the limitations issue. And unless the court has any questions on the punitive damages issue, I'm happy to conclude. Thank you. Thank you. You have a few minutes for rebuttal. Thank you, Your Honors. Just to briefly address the 1102.5 issue. The case is holding that different statutory provisions provide different remedies for actual versus penalties. These don't imply that they need to be in different code sections. They simply need to be different statutory provisions. And, in fact, in Pompeii, which we cited in both of our opening and reply brief, the court was very explicit about that. And it says, and I quote, the same statute may provide for different remedies, and those remedies may be subject to different limitations periods. There is just no question as to California law. So your view would be that, yeah, because you're interpreting, they're interpreting it as different, have to be in different code sections. But my understanding is that third case is kind of inconsistent with their position on that. And you would say that third case validates your view that it would have to be different statutory provisions, but they don't have to be in different statutes or in different code. That's correct, Your Honor. And there are other cases, in addition to HyperTouch, that have reached that conclusion as well, including Stone v. James, which, again, we cited, and the ash and oil case that you discussed with counsel for Walmart. And, indeed, you know, if we're trying to define what the California Supreme Court would do and would it, you know, disregard the weight of California appellate authority, the California Supreme Court has weighed in on this in Pineda, where it held that Section 203 claims for penalties would be governed by a one-year statute of limitations. Section 203 claims for inaccurate wage statements, where claims for actual damages would be governed by a three-year statute of limitations. So I want to make sure before you run out of time that you answer your opposing counsel's view of, like, you don't really need an evidentiary ruling in this case. Everybody is going to behave themselves on the matter. Well, I hope that that is true, Your Honor. Again, I think the argument that we – well, we won with, you know, one arm tied behind our back the first time means that we can do it again in front of a new jury, should that be relevant. I don't think it's a convincing argument. But what about the idea that – I mean, how does that play into our analysis that, in theory, there could be a jury trial, but I do think he makes a good point that it does seem unlikely that it would. And especially if we made it clear in an opinion that the district court judge can revisit the issue, is that good enough for you guys? Again, Your Honor, I think that it would avoid us hopefully having to be up here in another year and a half if the panel were to weigh in on those issues. I agree that it is certainly – The problem with weighing in on them is that I don't know how we can weigh in on them and not get to the balancing issue. And the balancing – and I'm not sure if you went on that because the balancing issue is abuse of discretion, right? And what makes it complicated is in doing that balancing, your point is, well, it's still relevant to other issues. But I don't know that we've ever addressed in any cases if it's relevant to – if the main issue that it seems to be relevant to – maybe we could all agree that the main – that they've stipulated it to. What do you do with that when they've taken that off the table? Yes, you can still use that evidence, but it does obviously make – change the balance when the main – if you think there's some prejudice to it, but it also is probative. But one of the main things it's probative for, you've kind of eliminated by stipulating to that suddenly changes that balance. And that's just a complicated thing for a court of appeals to deal with when we layer on top the abuse of discretion standard. And a little bit in the abstract, I feel like, because the jury trial won't have happened in this case yet for that second issue. So I think the prejudice that Walmart complains of is folks knowing that they in fact violated the cold chain, which they think might inflame the jurors. That is a limited amount of prejudice compared to the relevance as to causation, right? And in fact, I think it really is central to causation. Why do they have a motive? Why do they have incentive to keep Mr. Locher quiet, to get rid of him? Because they're saving money by violating the cold chain, by letting this food melt and sticking it back in the freezer, and he won't shut up about it, so they have to get rid of him. So it is, I think, central to that issue. And the prejudice is simply that the thing he was complaining about was in fact happening. And I see my time is up, so. Thank you for your argument. And the case of Ryan Locher versus Walmart is submitted.
judges: IKUTA, NELSON, VANDYKE